# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **JERMAINE L. RUSH,** | § |
| **Plaintiff,** | § |
| | § |
| vs. | § CIVIL ACTION NO. 3:15-CV-2826 |
| | § |
| **NATIONAL RESORT MARKETING CORP. d/b/a DOUBLE DIAMOND RESORTS and UNITED EQUITABLE MORTGAGE COMPANY d/b/a DOUBLE DIAMOND RESORTS,** | § Jury Demanded |
| **Defendants.** | § |

## ORIGINAL COMPLAINT

Plaintiff Jermaine L. Rush ("Plaintiff" or "Rush") brings this action against Defendants National Resort Marketing Corp. d/b/a Double Diamond Resorts ("Double Diamond") and United Equitable Mortgage Corporation d/b/a Double Diamond Resorts ("UEM") (collectively hereinafter "Defendants") and would show this Court as follows:

### I.   PARTIES

1. Plaintiff Jermaine L. Rush is an individual who is a resident of the State of Texas.

2. Defendant National Resort Marketing Corp. d/b/a Double Diamond Resorts is a corporation organized under the laws of the state of Texas, with its principal place of business in Dallas, Texas. Defendant Double Diamond may be served by serving its registered agent, R. Jeffrey Schmidt, 5495 Beltline Rd., Ste. 200, Dallas, Texas 75254.

3. Defendant United Equitable Mortgage Corporation d/b/a Double Diamond Resorts is a corporation organized under the laws of the state of Texas, with its principal place of

business in Dallas, Texas. Defendant UEM may be served by serving its registered agent, R. Mike Ward, 5495 Beltline Rd., Ste. 200, Dallas, Texas 75254.

## II.     JURISDICTION AND VENUE

4. This Court has jurisdiction over this case because Plaintiff has asserted claims under federal law, specifically 42 U.S.C. § 12101 *et seq*.

5. Venue properly lies in this Court because all acts and omissions giving rise to this claim took place in Dallas County, which is in the District and Division in which suit has been filed.

## III.    FACTS

6. Plaintiff began his employment with Defendants in July 2006. As a benefit to his employment, Plaintiff was allowed free membership and access to Defendants' corporate gym in the office building.

7. On June 9, 2009, Plaintiff was diagnosed with Human Immunodeficiency Virus ("HIV").

8. On June 11, 2009, Plaintiff informed Defendants' management of his diagnosis. Specifically, Plaintiff informed Tammy Rudder ("Rudder"), Defendants' Vice-President, and Ken Jones ("Jones"), Plaintiff's supervisor. Later that day, Defendants' HR Director, Fran Pfeifle ("Pfeifle"), Defendants' Chief Executive Officer ("CEO"), Mike Ward ("Ward"), and Assistant to the CEO, Shana Schumate ("Schumate"), were informed of Plaintiff's diagnosis. Upon learning of Plaintiff's diagnosis, Ward prohibited Plaintiff from using Defendants' corporate gym. Rudder told Plaintiff that the action may not be right, but Ward and others needed education on HIV.

9. Plaintiff's treating physician informed Plaintiff that he needed regular exercise in order to control the effects of his HIV. Defendants' refusal to allow Plaintiff use of the company gym, despite providing all other employees access, made it very difficult for Plaintiff to get his necessary exercise while still providing his full efforts to Defendants. Plaintiff was forced to buy a private gym membership and either visit the gym very early in the morning before work or after work.

10. In April 2011, Defendants relocated their offices and Defendants requested Plaintiff assist other employees in preparing the gym to move.

11. Thereafter, Plaintiff began to use Defendants' corporate gym. Plaintiff assumed enough time had passed since his diagnosis and that by that time, Defendants' CEO understood his disease and that it could not be spread simply via sweat and sharing a gym.

12. In December 2013, while Plaintiff was using the gym, Ward walked into the gym to use the restroom. Ward did not speak to Plaintiff.

13. On January 3, 2014, after Plaintiff returned from Christmas Break, Rudder informed Plaintiff that Ward was unhappy that Plaintiff was using the gym and Rudder reminded Plaintiff that he was forbidden from using the gym. Rudder told Plaintiff that just because it was unfair that Plaintiff could not use the gym, it did not make it right for Plaintiff to disregard this discriminatory rule. Rudder further told Plaintiff he needed to understand that fact if he was going to continue working for Defendants. Astonishingly, Rudder told Plaintiff it was unfair of *Plaintiff* to put Rudder in that position.

14. On January 31, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which he alleged Defendants discriminated against him based on his disability, HIV.

15. Plaintiff had no disciplinary history with Defendants at the time Plaintiff filed his Charge of Discrimination with the EEOC.

16. On February 3, 2014, Jones informed Plaintiff that Defendants received the Charge of Discrimination from the EEOC.

17. The next day, Rudder met with Plaintiff and in an accusatory tone, asked Plaintiff what he wanted from his EEOC Charge. Rudder belittled Plaintiff's complaint as one that constituted a simple denial of access to Defendants' corporate gym rather than one that constituted Defendants' blatant treatment of Plaintiff as a second-class citizen.

18. On February 11, 2014, Pfeifle and Defendants' attorney, Jonathan Hawkins ("Hawkins"), met with Plaintiff to "try and save [Plaintiff] a trip downtown" to resolve the EEOC Charge. Pfeifle told Plaintiff that she did not agree with his decision to file the EEOC Charge. Pfeifle indicated she knew about Ward's decision to ban Plaintiff but that the decision was permissible because Pfeifle believed that Plaintiff accepted the ban.

19. Two weeks later, on February 25, 2014, Jones informed Plaintiff that Defendants were adjusting Plaintiff's productivity expectations because of Plaintiff's school schedule. In fact, the new productivity expectations were more stringent than Plaintiff's co-workers. Plaintiff protested these new productivity expectations to no avail.

20. The next day, Jones informed Plaintiff that Plaintiff failed to meet the new productivity expectations. Again, Plaintiff explained to Jones that his new productivity expectations were greater than his co-workers. Plaintiff also met with Pfeifle and Rudder about the unfair expectations, but Defendants continued to harass and torment Plaintiff.

21. As a result of Defendants' harassment and the resulting mental toll Plaintiff suffered, Plaintiff requested a leave of absence. Plaintiff took a leave of absence on March 10,

2014. As a requirement for his leave of absence, Plaintiff visited a counselor and was diagnosed with an anxiety disorder and depression.

22. On June 9, 2014, Plaintiff had exhausted his leave and was required to return to work. Having seen no change in his working conditions, Plaintiff determined that his working conditions would not improve and that he would continue to be singled out and mistreated because of his disability. Plaintiff's counselor and primary physician also advised Plaintiff not to return to work out of concerns for his health. As such, Plaintiff resigned his employment.

23. Subsequently, the EEOC issued a Letter of Determination, in which the EEOC determined Defendants discriminated against Plaintiff because of his disability and also retaliated against Plaintiff.

## IV.   CAUSES OF ACTION

*Disability Discrimination Under 42 U.S.C. § 12101*

24. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 23 hereinabove.

25. 42 U.S.C. § 12112 prohibits employment discrimination based on a disability.

26. Defendants discriminated against Plaintiff in violation of 42 U.S.C. § 12112 because of Plaintiff's disability, HIV.

27. As summarized above, Defendants discriminated against Plaintiff by not providing him a benefit of employment that all other employees received.

28. As a result of Defendants' actions, Plaintiff suffered and continues to suffer damages, and Plaintiff hereby sues.

29. Plaintiff further requests his attorneys' fees under 42 U.S.C. § 12205.

## V. JURY TRIAL DEMAND

30. Plaintiff demands a trial by jury on all issues of facts and damages raised in this case.

## VI. CONDITIONS PRECEDENT

31. All conditions precedent to Plaintiff's right to recover have been performed or have occurred. Specifically, on or about August 11, 2014, Plaintiff received his Notice of Right to Sue from the Equal Employment Opportunity Commission.

## VII. RELIEF SOUGHT

32. WHEREFORE, cause having been shown, Plaintiff prays for judgment against Defendants as follows:

 a. Front pay and back pay in an amount to be determined by the jury;

 b. Compensatory damages against Defendants as a consequence of Defendants' unlawful actions, in a precise amount to be determined by the jury;

 c. Punitive damages in an amount to be determined by the jury;

 d. Reasonable attorneys' fees, expenses, and costs of the action;

 e. Pre-judgment and post-judgment interest at the highest rates allowed by law; and

 f. For such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

**SIMON | PASCHAL PLLC**
13601 Preston Road, Suite W870
Dallas, Texas 75240
(972) 893-9340 Telephone
(972) 893-9350 Facsimile

By: /s/ Paul W. Simon_____
    Paul W. Simon, Attorney-in-Charge
    State Bar No. 24060611
    paul@simonpaschal.com
    Dustin A. Paschal
    State Bar No. 24051160
    dustin@simonpaschal.com

**ATTORNEYS FOR PLAINTIFF
JERMAINE L. RUSH**